The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw a nine and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. All right, be seated please. All right, first case we're going to hear today is United States v. Jones and Mr. Moss, I guess we'll hear from you. Thank you, Your Honor. May it please the Court, my name is Aaron Moss, I represent Gary Jones, and I'll be preserving seven minutes for rebuttal. Mr. Jones' federal conviction for unlawful possession of ammunition arises from an invalid search warrant. The affidavit does not show probable cause of the crime listed, threats to commit terrorist acts, warrants overbroad, and does not show fair probability that evidence of threats to commit terrorist acts would be located at Jones' residence. There is a deficient nexus between the location to be searched and the crime listed in the search warrant. Because it's so lacking in probable cause as to render official belief in this existence unreasonable, because the warrant is so facially deficient that no reasonable officer would confirm it valid, those bare bone assertions that make up the 12 posts listed in the affidavit make Leon's good faith exception not to apply. For those reasons, Jones is requesting this Court find the District Court error in denying this pretrial motion to suppress and vacate and remand to the District Court for further proceedings in light of the court's ruling here today. First off, the search warrant affidavit does not show probable cause of the crime listed, threats to commit terrorist acts. Here, the facts and circumstances presented in the affidavit don't support a sufficient basis upon which to conclude probable cause that Jones, knowing and willfully, threatened to commit an act. What was he doing in all those emails? Well, Your Honor, those are online posts made to Facebook and to a public forum commenting to an article. There are 12 posts beginning in July 18 of 2017 and ending in February 17, 2018. His post basically says, kill all the pigs that come to my house, they're in trouble, look out for neely, look out for cocks, look out for humpers, I hope cops die in heaven, I'm going to kill the cops. I mean, this is a guy that is, if the next day we had a big shooting against cops and we had all of these things, do you think the cops would, and they knew about this, do you think they would be subject to criticism and not acting? Your Honor, it is always, the safety of police officers is a concern. These are pretty outlandish, aren't they? Well, Your Honor, they are generalized and they are vague. Generalized? He uses names, he uses cops, he uses incidents, he talks about if they come to my house. With regards to the names, Your Honor. Basically, he's saying, if I see a cop, I'm going to kill him if I have a chance. I mean, that's the type of thing that you deduce from this. Well, Your Honor, I would respectfully disagree. If we break down these 12 posts, we see that many of them are directed against individuals. The West Virginia Supreme Court in Yukon, which looked over this statute, held that a terrorist act, a threat to commit a terrorist act, must be against a level or branch of government, not against individuals. Well, do you agree or disagree that terrorist threats against the police would qualify as against a branch of government? Against the police, I do agree, Your Honor. However, I do not see... Don't we have collectively here, he's looking for several officers. It seems to me what you're trying to do is to separate out and make these into segments rather than have us look collectively at what he was saying. And it also seems to me that a fair reading is that he was saying, I'm after the police. These are the people that I'm particularly interested in, but I want to kill some cops. Your Honor, he may be after the police. However, all the elements of the West Virginia anti-terrorism statute here are not met. Which one? I would say intended for express political purpose or motivation is not met. And any statement when he talks about being after... I don't believe it's sufficient facts or circumstances represented in the affidavit to get to probable cause that there is retaliation against a specific branch or level of government. Well, they say he was pulled over and then he started making these threats. Against the individual who pulled him over. And then it escalated to against multiple police officers. I would say that when we get to the point of him talking about cops or, in his word, pigs, we do not see those statements accompanied by a threat of serious bodily injury that is intended for express political purpose or motivation. When we get to that point... I'm struggling with the Wilson case. I know Yoakam is the first one, but the West Virginia Supreme Court clarified that in Wilson. And that's the case where you have a school custodian who gets more assignments, more work assignments than he wants. And he says to the other custodians, if I get more work, I'm going to start shooting people. And the West Virginia Supreme Court said that's enough for an indictment under this statute. Because the branch of government is the school, that was enough for a threat to qualify under these specific prongs about influencing policy or retaliation. How do you distinguish this case, where there's threats against pigs, against the police, from Wilson? I would say in this case, based on these statements, even the totality of these statements, he never says that he is going to shoot police or a branch or a level of government. I'm going to pull this trigger, bang, bye. Yes, Your Honor. Just take that to mean I'm going to kill a cop and he's going to be dead. I do not see how that statement being the first statement that was posted on February 16, 2008, is specific enough to infer or suspect or believe that it is directed against any one level or branch or an individual or in fact himself. It could be a suicidal ideation, Your Honor. Part of the same thing, area. If pigs come here, be careful. Be careful. That is not a... That means I'm going to shoot him. I do not believe that that rises to the level of something specific enough to indicate serious bodily injury. And moreover, when we look at the search warrant, we see that it's overbroad and there's no fair probability that evidence of threats to commit terrorist acts would be located at Jones' home. Where would they be located? Where else? Anywhere else? Every single threat of terrorism, the very first place investigators go is to the house. Your Honor, if... And he says, if they come to my house, look out. If Your Honor believes there's probable cause in the affidavit for threats to commit terrorist acts, then those statements, those 12 statements, that is the threat. The threat alone is sufficient under statute. No, we were talking about whether the house was an appropriate place to search. Yes, Your Honor. But you were just talking about whether it is, and I'm asking you, where else would they look? Well... If we conclude they have probable cause and they're going to look behind this, obviously try to prevent a shooting, it seems to me the very first place, the very first place they're going to go is to look at the house for ammunition, guns, and whatever. Your Honor, the statute, it's a felony to commit a threat, to commit a terrorist act, with or without intent to commit the act. The 12 posts complete the crime. They can look online. That doesn't mean that the police can't look for more evidence, right? You would agree that just because they have probable cause, if you think they have probable cause just based on the threats, doesn't mean the police can't get a warrant to look for more evidence of the crime. Evidence, if there's ammunition in his house, that's more evidence of his intent, et cetera. But intent is not required to commit this crime. The crime's committed just when the threat is made, and those threats are the 12 online posts, if Your Honor believes that there's probable cause based on those posts. But my point is that the police are not hamstrung by the fact that the threats might be enough to prove the crime. They can still look for more evidence. They can get a warrant to let them go and find, oh, he does have ammunition. These were real threats. Or anything else. Maybe there's more threats on a different, you know, who knows what other electronics he has at the house, et cetera. However, Your Honor, intent to carry out or to execute the threat is outside what this is. Except there's a mens rea with the threats. Right. Knowingly and willingly threatens. The mens rea is the threat, and intent to commit is not required. But as Judge Rushing just pointed out, if he has ammunition and has guns, we know those threats were real. They're knowing threats. He wasn't just joking. For the purposes of probable cause. Don't you think they could introduce the fact there were guns in his house and ammunition in his house? Well, Your Honor, I don't believe any guns were located in his house. They didn't find any guns, but I'm saying that's what they could search for. I believe that based on the crime listed in the affidavit for the search warrant, the crime listed in the search warrant, what they were searching for was threats to commit terrorist acts. Not an intent, not any kind of evidence to carry out or execute. The threat alone is sufficient under statute. And so the search warrant's broader than the probable cause on which it's based. The evidence that they're searching for in here, and when we look at the list of the evidence they're searching for, they never once say they're searching for a threat. They're searching for evidence of intent to carry out and execute. And that, again, falls outside what's required under the statute. They could be looking for evidence to justify knowingly and willingly threatening. I believe, again, Your Honor, that the evidence to carry out to execute, that physical evidence, is not relevant to a thought crime, which is what this statute prescribes. It's certainly circumstantial evidence of his state of mind, isn't it, whether he was knowingly making these threats? I mean, it's not direct evidence, I agree, but it's certainly circumstantial evidence that when he made these statements, he knew what he was doing. I mean, he was stocked and ready to go. Well, I believe that these statements alone don't rise to probable cause, but the items that are sought in the search warrant are uniquely not evidence of the suspected criminal activity listed in the search warrant, which is just the threat alone. And moreover, the 12 all-months... It seems to me if you took these statements, a jury could find it's not only probable cause. A jury could convict him or not. Your Honor, I... You say it's not a probable cause. You know, probable cause doesn't have to establish the crime. It just has to be probable cause of crimes was committed. I agree, Your Honor. However, I think that, again, the search warrant doesn't list any training or experience. There's no independent police cooperation of this. And I think that what these are is what Yukum says, the type of impulsive empty threat that a seasoned police officer regularly encounters during his duties, a threat that falls well outside the definitional parameters of terrorist activity. Terrorism has a unique meaning, and that meaning cannot be... What if they went home and they found three AR-17s. They found a room stored with ammunition and maps. In this case, they did find maps. You have plans to carry out things. Your Honor, I don't believe that... These are all terroristic evidence of terrorism. That makes the threats not hollow. If they found that, the threat doesn't hollow. You're trying to suggest that this could be a hollow threat. I'm trying to suggest that the evidence presented to the magistrate was, one, not enough to show probable cause of a threat to commit a terrorist act, and, two, if it was, if there was a threat, then those 12 statements complete the crime. And evidence of an intent to carry out is not needed, and that is precisely what they were listed as searching for in the warrant. It's over-broad.  Thank you, Your Honor. Ms. Botticher, you'll have to correct it for me. I apologize. Good morning. Thank you, Your Honor. I may have confused the court. I'm Laura Alice Botticher, and I represent the United States. Thank you. I complicated things by hyphenating that last name, so I apologize. That's all right. I represent the United States, and this court should affirm the district court's holdings for three reasons below. First, the search of Jones' residence was lawful, and it was supported by a search warrant with probable cause. And I've heard the court ask a lot of questions about whether these statements in the affidavit rise to the level of probable cause, and the United States maintains that it does. The appellant seeks to individualize these statements and to take each post separately to evaluate whether that post individually rises to the level of probable cause. And that's not what's necessary in reviewing this affidavit. Here, what should be done, and what I believe that this court and the court below definitely found, was that all of these statements should be viewed in context, not in a vacuum, and they should be evaluated from a totality-of-the-circumstances approach. So in looking at the statements made, yes, they began on July 18, 2017, with a stop made by Corporal Neely of the Martinsburg Police Department. Right after, the very next day from that stop, on July 19, 2017, there is again a public Facebook post by Mr. Jones. These are not private messages. These are not individually communicated threats. And I think Yoakum is distinguishable from these facts for that reason. In Yoakum, it was a statement made by a handcuffed defendant in the back of a patrol car, and he made it to one individual officer and it was a threat about his daughter. And the West Virginia Supreme Court there found that that wasn't an institutional threat or against a branch or level of government. They highlighted that the defendant was handcuffed and restrained and at the back of a patrol car and made it to one officer. Here, Mr. Jones is making these threats on a different platform. They're not individual communications. They are widespread. They're on a public forum. First, he starts with the public forum. He's actually inviting people to participate, the public to participate in his retaliation. Absolutely, Your Honor. In all of these cases where he's making these threats, first on July 19, 2017, he's asked if people can tell him where Martinsburg City cop Eric Neely lives. Then, going to January 4, 2018, and I recognize that that's six months difference, but I also think that's important. He obviously still harbors this threat six months later. So looking at January 4, 2018, he now states again that he's on a manhunt. I think the use of the word manhunt, and also on July 19, he uses that phrase cop manhunt. That implies that it's not just that he's trying to find them and discuss something with them, that this is a threat. He's on a manhunt. It has a very serious connotation that shouldn't be taken lightly. So again, he's threatening that he's on a manhunt for Martinsburg City cop Eric Neely. Then he asks again if anyone could tell him where he lives that he needs to find him. And on the same day, January 4, 2018, he then threatens two additional cops. One is Berkeley County cop Deputy Cox. The other one is Berkeley County cop Deputy Humphreys. And he's again asking if anyone knows where they live. And I think what's important here is there are three officers. We've read all these. Is there anything further in that line that you want to add? I just want to add that there's three separate cops here that are threatened. And it's more than three separate cops. There's another cop that slid the tires, and then there's another kill all cops. I take my gun into the bar even though I don't, there's a rule against that. Exactly, Your Honor. Do you have anything else further? How about the house? As far as the house, I think this court in United States v. Winkie had addressed that, that you can make a reasonable inference that items such as firearms or items even for planning a terrorist act would be kept in one's residence. That that itself, by taking that normal inference, it's reasonable. People with common sense approach of where people would store these items, it's likely going to be their residence. So although it may not, the affidavit in this case might not have been a model of precision on that. However, I think this court can get there by taking the reasonable inferences of where one would keep these items. So computers, documents for planning this type of thing would normally be kept at a residence, as well as computers. All of that would normally be kept at one's residence. So using that normal reasonable inference of where one would keep these, under United States v. Winkie, I believe that there is a sufficient nexus to that residence. Also, officers did put in the affidavit that they confirmed they had done surveillance and confirmed that he had ties and believed that to be his residence. Additionally, Your Honor, in looking at the nexus approach here, as far as the items, I believe this court was exactly right, that you can look at not just the items that perhaps committed the crime, but you can look for, broader than that, evidence of the crime here, or instrumentalities to commit the crime or make good on those threats. Here, specifically, firearms, ammunition, weapons of those types, but also explosive, precursor explosives, all of that was sought in the search warrant because they were investigating a crime that was a terroristic act at that point. Anything else? Your Honor, just that, if anything, the Leon Goodfaith exception would certainly save this if the court would find that there is not probable cause in the search warrant. A magistrate and a district judge both found that there was probable cause, and an officer would have had a reasonably objective reliance to rely on the warrant. If the court has no further questions, then I would just ask that it affirm the district court's holding below. Thank you. Thank you, Your Honor. Mr. Moss. Thank you, Your Honor. Your Honor, threats to commit terrorist acts, the statute listed in the search warrant says that any person who knowingly and willfully threatens to commit a terrorist act with or without intent to commit the act is guilty of the felony. The terrorist threat is the felony, regardless of intent to actually commit. The totality of these 12 statements that the magistrate had to determine probable cause are too vague and too generalized to meet the unique meaning of the concept of terrorism, and that is the collective understanding is both violence and political motivation directed against a branch or level of government. All you need is the threat, and items that evidence intend to carry out and execute  That is an overbroad warrant, Your Honor. It fails the particularity requirement. Moreover, the affiant lists no corroborating information to show that the threats were made from the residents, to show who may have made these threats on the online forum, and the affiant lists no training or experience or independent observations to support a nexus between the threats and the place searched. I don't believe that the police were hamstrung to go in and search this house for items that evidence executing or carrying out a terrorist threat. I think they, if anything, if this panel is inclined to believe there was probable cause based on these 12 statements, then that is the crime. The crime has been completed. The threat is there, and the intent to carry out, which is what all of the evidence listed in the search warrant of what they intend to seize, is not relevant to the crime listed in the search warrant. For those reasons, Your Honor, we would ask that this court reverse the ruling of the district court and remand down for further proceedings as appropriate. The facts and circumstances simply do not support a sufficient basis on which to conclude that there was probable cause that he either committed a terrorist threat or that evidence of a threat would be found at this residence. Okay. Thank you. We'll come down to Greek Council and then proceed on to the next case.
judges: Paul V. Niemeyer, Barbara Milano Keenan, Allison J. Rushing